UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No.: 3:25-cv-00740

| | |
|---|---|
| TYLER HENADY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) COMPLAINT AND DEMAND FOR JURY |
| | ) TRIAL |
| KAMPS, INC., | ) |
| | ) |
| Defendant. | ) |

Plaintiff, Tyler Henady ("Henady"), by and through counsel, brings this action for violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, against Kamps, Inc. ("Kamps"). Plaintiff additionally brings a claim for wrongful discharge in violation of the public policy of North Carolina.

### NATURE OF HENADY'S CLAIMS

1. Kamps unlawfully discriminated against Henady in violation of the ADA by demoting and subsequently terminating his employment because of his disability and/or it regarded him as having a disability. Upon Henady's return from a protected medical leave of absence for in-patient rehabilitation, Kamps immediately demoted him from his role as a Production Supervisor to a physically demanding manual labor position as a Pallet Builder. Kamps' General Manager, Mike Brown ("Brown"), informed Henady that the demotion was necessary because employees would view him as a "laughing stock" and that Henady needed to "prove" he could be trusted again. Kamps memorialized this discriminatory animus in a memorandum requiring Henady to sign and agree that he needed to "rebuild a foundation of trust and reliability." Kamps' stated reason for the demotion, a corporate restructuring, was a pretext for unlawful disability

discrimination, as Kamps' actions and statements demonstrate it knew Henady had a disability and/or it regarded him as disabled and untrustworthy due to his recent rehabilitation. Shortly thereafter, when Henady sustained a work-related injury performing his new physically demanding duties and sought medical attention, Kamps seized the opportunity to terminate his employment for pretextual attendance-related reasons, completing its discriminatory course of conduct.

## THE PARTIES

2. Henady is an adult individual who is a resident of Monticello, Indiana.

3. Kamps is a foreign corporation formed under the laws of Michigan with its principal place of business located at 2900 Peach Ridge Ave NW, Grand Rapids, Michigan 49534.

4. At all relevant times to this lawsuit, Kamps owned and operated two facilities in Charlotte, North Carolina: Plant One (located at 5104 N. Graham St.) and Plant Two (located at 3500 N. Graham St.).

## JURISDICTION AND VENUE

4. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under the ADA for unlawful discrimination.

5. Henady's wrongful discharge in violation of public policy claim is based on the laws of the State of North Carolina. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent state law claims because they arise out of the same nucleus of facts giving rise to Henady's ADA claims.

6. This Court has personal jurisdiction because Kamps conducts substantial business in Mecklenburg County, North Carolina, which is located within this judicial district.

7. Venue is proper in this judicial district because Kamps has substantial business contacts in this district and because the unlawful acts alleged herein occurred in Mecklenburg County, North Carolina, which is located within this judicial district.

**COVERAGE ALLEGATIONS**

7. At all times relevant to this action, Henady was a "qualified individual" covered by the protections of the ADA, as amended, within the meaning of 42 U.S.C. § 12111(8).

8. At all relevant times, Kamps was a "covered entity" engaged in an industry affecting commerce and had at least fifteen (15) or more employees for each working day. Kamps has more than 500 employees nationwide.

9. At all relevant times, Henady was an "employee" within the meaning of 42 U.S.C. § 12111(4).

10. Kamps is an "employer" within the meaning of 42 U.S.C. § 12111(5).

11. Kamps employed at least fifteen (15) employees at all relevant times.

12. Henady has satisfied all administrative and statutory prerequisites to filing this action. Henady filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 430-2025-01593, alleging discrimination based on disability. The EEOC issued a Notice of Right to Sue on June 27, 2025, and Henady timely brings this action within ninety (90) days of his receipt thereof.

**FACTUAL ALLEGATIONS**

13. Henady began his employment with Kamps on or about April 15, 2024, as a 2nd Shift Production Supervisor at Kamps' Charlotte Plant Two.

14. The Production Supervisor role was a supervisory position that required Henady to oversee the day-to-day activities of the production team and did not require significant physical labor. At all relevant times, Henady met or exceeded Kamps' legitimate employment expectations.

15. In or about late June 2024, Henady acknowledged he was developing a substance abuse issue, a recognized medical condition, and proactively decided to seek in-patient medical treatment at a rehabilitation clinic.

16. On or about June 23, 2024, Henady notified Brown, his General Manager, that he was having a medical emergency and would be absent. On June 24, 2024, a representative from the rehabilitation facility, Dream Life Recovery, contacted Kamps to coordinate Henady's medical leave of absence.

17. Kamps was aware of the medical nature of Henady's leave. Kamps' HR Generalist, Samantha McPherson, was informed that Henady had been admitted for "mental health decomposition," and Kamps proceeded to grant Henady a personal leave of absence and facilitated his receipt of short-term disability benefits.

18. Henady successfully completed a 28-day in-patient rehabilitation program and was released on or about July 26, 2024.

19. On July 29, 2024, Henady returned to work and met with Brown. In that meeting, Brown informed Henady that he was being demoted from his supervisory role to a manual labor position as a Pallet Builder at a different facility, Charlotte Plant One.

20. Brown stated that the demotion was necessary because employees at Henady's original plant would view him as a "laughing stock" following his medical leave for rehabilitation. Brown further stated that Henady needed to "prove" that he could be trusted again.

21. Brown's statements demonstrate that Kamps regarded Henady as being impaired and acted upon negative stereotypes associated with rehabilitation and addiction by demoting him.

22. Upon information and belief, Kamps further demonstrated its discriminatory animus by informing Henady's co-workers that he had been admitted to a rehabilitation clinic, a confidential medical matter.

23. On August 1, 2024, to formalize the discriminatory demotion, Brown required Henady to sign a "Memo of Understanding." The Memo explicitly stated that the decision was made "following the handling of your abrupt extended absence" and that "[w]e believe it is crucial to rebuild a foundation of trust and reliability within our team."

24. The Memo further conditioned Henady's future advancement on "demonstrating your commitment and reliability," confirming that Kamps viewed Henady as untrustworthy and unreliable specifically because of his protected medical leave.

25. The Pallet Builder role was a physically demanding, non-supervisory position that required Henady to perform repetitive physical tasks, a significant departure from his prior role.

26. Sometime between July 30, 2024, and August 2, 2024, Henady suffered a repetitive strain injury to his arm as a direct result of performing the strenuous duties of the new Pallet Builder position.

27. On Monday, August 5, 2024, due to the pain from his arm injury, Henady was unable to work. He notified Kamps of his absence by calling the company's employee hotline, a procedure he believed was appropriate for reporting absences.

28. On Tuesday, August 6, 2024, Henady again used the company hotline to report that he would be absent for a doctor's appointment for his arm. Later that day, Henady obtained a doctor's note excusing him from work for two weeks and recommending he visit a specialist.

29. On Wednesday, August 7, 2024, Henady went to the worksite with the specific purpose of providing Brown with the doctor's note that medically excused his absences.

30. Upon Henady's arrival, Brown intercepted him and, instead of accepting the medical documentation, informed Henady that his employment was terminated due to "attendance."

31. Kamps' stated reason for terminating Henady—three consecutive "no-call/no-show" days on August 3, 5, and 6, 2024—was a pretext for unlawful disability discrimination. Henady had, in fact, notified Kamps of his absences on August 5 and 6, 2024 to seek medical care for an injury he sustained in the job to which Kamps had discriminatorily demoted him.

## FIRST CAUSE OF ACTION
### (Violation of the ADA – "Regarded as" Discrimination)

32. Henady realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

33. At all relevant times, Kamps regularly employed more than fifteen (15) employees and is an employer covered by the ADA.

34. At all times relevant, Henady was a qualified individual capable of performing the essential functions of his position as Production Supervisor, with or without reasonable accommodation.

35. Kamps regarded Henady as having a physical or mental impairment, namely a substance abuse disorder, and discriminated against him on the basis of this perceived disability. Kamps' perception and stereotypes about individuals who have received treatment for substance abuse formed the basis for its discriminatory actions.

36. Kamps discriminated against Henady by subjecting him to adverse employment actions because it regarded him as disabled, including but not limited to: demoting Henady from

a supervisory role to a manual labor position, subjecting him to stigmatizing comments that he would be a "laughing stock" and needed to "rebuild trust," and ultimately terminating his employment.

37. Kamps' stated reasons for its adverse actions—a purported corporate restructuring for the demotion and alleged attendance violations for the termination—were pretexts for unlawful discrimination.

38. As an actual, proximate, and foreseeable result of Kamps' discriminatory actions, Henady suffered lost back and front pay, lost employment benefits, and has suffered and continues to suffer emotional distress, anxiety, embarrassment, and humiliation.

39. Kamps' actions as described herein were intentional, willful, and undertaken with reckless indifference to Henady's federally protected rights.

## SECOND CAUSE OF ACTION
### (Violation of the ADA - Discrimination)

40. Henady realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

41. At all relevant times, Kamps regularly employed more than fifteen (15) employees and is an employer covered by the ADA.

42. At all times relevant, Henady was a qualified individual capable of performing the essential functions of his position as Production Supervisor, with or without reasonable accommodation.

43. Henady was disabled in that he had impairments that substantially limited one or more major life activities, including but not limited to, working interacting with other communicating, thinking, and caring for himself.

44. Kamps discriminated against Henady by subjecting him to adverse employment actions, including but not limited to: demoting Henady from a supervisory role to a manual labor position, subjecting him to stigmatizing comments that he would be a "laughing stock" and needed to "rebuild trust," and ultimately terminating his employment because of his disability.

45. Kamps' stated reasons for its adverse actions—a purported corporate restructuring for the demotion and alleged attendance violations for the termination—were pretexts for unlawful discrimination.

46. As an actual, proximate, and foreseeable result of Kamps' discriminatory actions, Henady suffered lost back and front pay, lost employment benefits, and has suffered and continues to suffer emotional distress, anxiety, embarrassment, and humiliation.

47. Kamps' actions as described herein were intentional, willful, and undertaken with reckless indifference to Henady's federally protected rights.

## THIRD CAUSE OF ACTION
**(Wrongful Discharge in Violation of Public Policy Based on Disability)**

48. Henady realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

49. The public policy of the State of North Carolina as set forth in N.C. Gen. Stat. § 168A *et seq.*, North Carolina's Persons with Disabilities Protection Act, prohibits employers from discriminating against employees on the basis of their disability. Henady is disabled and is therefore, a member of a protected class. This is specifically established in N.C. Gen. Stat. § 168A *et seq.*

50. Kamps violated the public policy of North Carolina as set forth in N.C. Gen. Stat. § 168 A *et seq.*, by terminating Henady, a member of the protected class, on the basis of his disability.

8

Case 3:25-cv-00740-MOC-SCR    Document 1    Filed 09/25/25    Page 8 of 10

51. As a proximate and foreseeable result of Kamps' conduct, Henady has suffered lost back and future wages and benefits, expenses, and other damages, which he seeks from Kamps.

52. Kamps' actions were done maliciously, willfully, or wantonly or in a manner that demonstrates a reckless disregard for Henady's rights. As a result, of Kamps' conduct, Henady is entitled to recover punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Henady respectfully requests that this Court grant the following:

a. A Declaration and finding by the Court that Kamps willfully violated the provisions of the ADA by discriminating against Henady on the basis of a regarded-as disability;

b. A Declaration and finding by the Court that Kamps willfully violated the provisions of the ADA by discriminating against Henady because of his disability;

c. A Declaration and finding by the Court that Kamps willfully violated the public policy of North Carolina by discriminating against Henady on the basis of his disability;

d. An Order requiring Kamps to pay Henady all lost wages, employment benefits, and other compensation lost as a result of Kamps' unlawful and discriminatory actions;

e. An Order requiring Kamps to reinstate Henady to the position he held before Kamps unlawfully demoted him, or award Henady future lost wages and benefits in lieu of reinstatement, in an amount to be determined at trial;

f. An Order requiring Kamps to pay Henady compensatory damages for his emotional distress, pain and suffering, anxiety, embarrassment, and humiliation;

g. An Order requiring Kamps to pay Henady punitive damages for its intentional, willful, and reckless disregard for Henady's federally protected rights;

h. An Order awarding Henady his reasonable attorneys' fees, litigation expenses, and the costs of this action;

i. An Order awarding Henady pre-judgment and post-judgment interest at the highest rates allowed by law on all sums recoverable; and

j. An Order granting such other and further relief as the Court may deem necessary, just, and proper.

## **JURY TRIAL DEMAND**

Henady demands a trial by jury for all issues of fact.

This 25th day of September, 2025.

Respectfully submitted,

/s/ Corey M. Stanton
Philip J. Gibbons, Jr., NCSB #50276
Corey M. Stanton, NCSB #56255
**GIBBONS LAW GROUP, PLLC**
14045 Ballantyne Corporate Place, Suite 325
Charlotte, North Carolina 28277
Telephone: (704) 612-0038
Facsimile: (704) 612-0038
Email: phil@gibbonslg.com
corey@gibbonslg.com

*Attorneys for Plaintiff*